**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ERICSSON INC. AND TELEFONAKTIEBOLAGET LM ERICSSON,<br><br>                                Plaintiffs,<br><br>        v.<br><br>APPLE INC.,<br><br>                              Defendant. | Civil Action No. 2:21-cv-376<br><br>**ORAL ARGUMENT REQUESTED**<br><br>██████████████ |

**APPLE'S MOTION TO DISMISS ERICSSON'S COMPLAINT**

## **<u>TABLE OF CONTENTS</u>**

Page

I.     INTRODUCTION ................................................................................................................1

II.    BACKGROUND ................................................................................................................2

       A.     The Parties' 2015 Patent License Remains In Effect.................................................2

       B.     Ericsson's Declaratory Judgment Complaint.............................................................4

       C.     Ericsson's Netherlands Anti-Anti-Suit Injunction And SEP Case .........................5

III.   ARGUMENT ................................................................................................................6

       A.     Ericsson's Claim Is Not Ripe Because The 2015 License Is In Force ...................8

       B.     Ericsson Has Failed To Allege The Existence Of A Justiciable Dispute And Is
              Seeking Advisory Opinions ....................................................................................10

       C.     The Court Should Decline Jurisdiction Over Ericsson's Claim ...........................13

IV.    CONCLUSION................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Life Ins. Co. v. Haworth*,
   300 U.S. 227 (1937) ................................................................................................7

*Amerada Petroleum Corp. v. Marshall*,
   381 F.2d 661 (5th Cir. 1967) ................................................................................15

*Apple Inc. v. Qualcomm Inc.*,
   No. 3:17-cv-00108-GPC-MDD, 2017 WL 3966944 (S.D. Cal. Sept. 7, 2017)........6

*Apple Inc. v. Telefonaktiebolaget LM Ericsson, Inc.*,
   No. 15-CV-00154-JD, 2015 WL 1802467 (N.D. Cal. Apr. 20, 2015) ....................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................6, 7

*Calderon v. Ashmus*,
   523 U.S. 740 (1998)................................................................................................15

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) ..............................................................................3, 11

*Core Wireless Licensing S.a.r.l. v. Apple Inc.*,
   No. 6:12-CV-100-JRG, 2015 WL 4775973 (E.D. Tex. Aug. 11, 2015)................12

*Ericsson Inc. v. Samsung Elecs. Co., Ltd.*,
   No. 2:20-cv-380-JRG (E.D. Tex. Dec. 28, 2020), ECF 11 ....................................5

*Golden v. California Emergency Physicians Med. Group*,
   782 F.3d 1083 (9th Cir. 2015) ................................................................................7

*Grupo Dataflux v. Atlas Global Grp., L.P.*,
   541 U.S. 567 (2004)................................................................................................10

*HTC Corp. v. Telefonakitebolaget LM Ericsson*,
   No. 6:18-CV-00243-JRG, 2019 WL 126980 (E.D. Tex. Jan. 7, 2019) ..................11

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
   No. 6:18-CV-00243-JRG, 2018 WL 6617795 (E.D. Tex. Dec. 17, 2018) .............13

*Huawei Techs. Co. v. T-Mobile US, Inc.*,
   No. 2:16-CV-00715-JRG-RSP, 2017 WL 957720 (E.D. Tex. Feb. 22, 2017).................12, 13

*Life Partners Inc. v. United States*,
    650 F.3d 1026 (5th Cir. 2011) ...........................................................................6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...........................................................................................8

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ...........................................................................................7

*Mission Ins. Co. v. Puritan Fashions Corp.*,
    706 F.2d 599 (5th Cir. 1983) .........................................................................15

*Orix Credit All., Inc. v. Wolfe*,
    212 F.3d 891 (5th Cir. 2000) ........................................................................6, 7

*Reg'l Rail Reorganization Act Cases*,
    419 U.S. 102 (1974) ...........................................................................................7

*St. Paul Ins. Co. v. Trejo*,
    39 F.3d 585 (5th Cir. 1994) ...........................................................................14

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
    563 F.3d 1271 (Fed. Cir. 2009)........................................................................3

*Texas v. United States*,
    523 U.S. 296 (1998) ...........................................................................................8

*United Transp. Union v. Foster*,
    205 F.3d 851 (5th Cir. 2000) ...........................................................................8

*Urban Health Care Coalition v. Sebelius*,
    853 F. Supp. 2d 101 (D.D.C. 2012) ..............................................................15

*Vantage Trailers, Inc. v. Beall Corp.*,
    567 F.3d 745 (5th Cir. 2009) ......................................................................7, 10

**Other Authorities**

U.S. Constitution Article III.................................................................................7

## I.    INTRODUCTION

Ericsson filed a procedurally-deficient Complaint in a transparent attempt to gain an improper advantage—to be the party with the first-filed case in any litigation that may occur between the parties when their 2015 cross-license expires—***even though that cross-license remains in effect today***.  Ericsson's Complaint fails on multiple grounds and should be dismissed.

***First***, Ericsson's claims were not ripe when filed—which is the time for judging ripeness—because the parties' 2015 license was still in effect when Ericsson filed and it still is.  Apple then had, and has today still, rights to use Ericsson's claimed standard-essential cellular patents ("SEPs").  Thus, when Ericsson filed its Complaint, the parties had no dispute about the essentiality or value of those patents because those issues were settled in 2015 for the entire term of the parties' agreement.  Further, ███████████████████████████████████████████████████ ████████████████████████████  Accordingly, Ericsson is incorrect that it faced imminent litigation from Apple about whether Ericsson was willing to abide by its commitment to license its patents on FRAND terms.[1]

***Second***, Ericsson's Complaint falls far short of establishing that a justiciable controversy existed as of its filing date.  Notably, it alleges no actual dispute between the parties during their negotiations about whether Ericsson would offer FRAND terms to Apple.  That is not surprising insofar as Ericsson filed its Complaint without allowing Apple any meaningful opportunity to even read—let alone dispute—the purported "offer" that Ericsson made just six minutes before it filed

---

[1] Now that Ericsson has improperly initiated litigation before the expiration of the parties' license, Apple must defend itself and assert its rights and thus Apple is filing concurrently today a complaint against Ericsson in this Court.  As explained in Apple's complaint, Apple includes claims regarding Ericsson's failure to comply with its FRAND obligations in the event that the Court disagrees with Apple's Motion and concludes that such claims can be pursued during the term of the parties' license.

suit.  Without alleging an actual dispute, Ericsson instead points to Apple's website that explains Apple's views on FRAND licensing.  But Ericsson cannot transform this general policy statement into a direct attack on Ericsson giving rise to a live dispute.

*Third*, even if the Court looks past these fundamental deficiencies in Ericsson's Complaint, it still should decline to exercise jurisdiction over Ericsson's declaratory judgment claim because it is a breach of the parties' 2015 license. ███████████████████████████████

████████████████████████████████████████████████████████████████

as it alleges that Apple has executed a purported scheme to "devalue" SEPs—including Apple's own—in violation of FRAND principles.  Ericsson apparently was content to breach the parties' license in this way so long as it enjoyed the tactical advantage of having the first-filed case.  The Court should not condone Ericsson's breach of contract and non-FRAND conduct to pursue an unfair litigation advantage.  To be clear, as set forth in Apple's own complaint filed today, Apple is willing to litigate a FRAND dispute with Ericsson before this Court when the time is right.  Apple's case is premised on a demonstrated breach and constitutes a proper case, whereas Ericsson's is not.

For the foregoing reasons, Apple respectfully requests that the Court dismiss, with prejudice, Ericsson's Complaint.

## II.    BACKGROUND

### A.    The Parties' 2015 Patent License Remains In Effect

As Telefonaktiebolaget LM Ericsson and Ericsson, Inc. (collectively, "Ericsson") acknowledge in their Complaint, Apple and Ericsson entered cross-licenses in 2008 and 2015 under which each party licensed the other to its cellular SEPs.  Original Complaint ¶¶ 7, 43, ECF 1 ("Compl.").  In particular, under the parties' ███████████████████████████ ("2015 License"), ████████████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█    ███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

Under the 2015 License, ████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████

Notably, Ericsson's Complaint omits that ***the 2015 License remains in force today***. ████

---

[2] Although not attached to Ericsson's Complaint, the 2015 License is part of the pleadings and may be considered by the Court because Ericsson references it in the Complaint and it is central to Ericsson's claim. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). Ericsson repeatedly references the 2015 License, Compl. ¶¶ 7, 43, 52, 56, including alleging that Apple's conduct preceding the 2015 License is relevant to establishing the existence of a controversy here, *id*. ¶ 56 ("Apple's conduct in this negotiation parallels its conduct in the parties' negotiations that preceded the 2015 cross license."). More broadly, an in-force license between Apple and Ericsson is, as described further below, plainly relevant to addressing whether Ericsson's claim is viable.



███████████████████████████████████████████████ Accordingly, Ericsson misrepresents to the Court that "Apple . . . requires a license to Ericsson's Essential Patents."  Compl. ¶ 7.  Apple already has such a license and requires no other.

Ericsson's Complaint also omits that ███████████████████████



### B.    Ericsson's Declaratory Judgment Complaint

On October 4, 2021, notwithstanding that the 2015 License ██████████████████ Ericsson did just that by seeking a declaratory judgment from this Court.   Ericsson seeks declarations that "Ericsson has complied with its commitment to ETSI that it is prepared to grant licenses to its Essential Patents on fair, reasonable, and nondiscriminatory terms" and "that Ericsson has complied with the ETSI IPR Policy in all respects, and all other applicable laws that would affect Ericsson's prospective license to Apple."  Compl. at 17.

As Ericsson concedes, it filed its Complaint the very same day that "Ericsson contacted Apple to reiterate its license offer under its publicly announced 5G multimode royalty rates."  *Id*. ¶ 55.  As noted above, Ericsson sued Apple six minutes after it sent its "sticker price" royalty rates—what Ericsson characterizes as an "offer" to Apple to extend the 2015 License—without

providing Apple any time to review it, let alone respond to it, before Ericsson sued. ***Ericsson thus filed suit before Apple even had an opportunity to review and consider the "offer" that Ericsson purportedly had made it***. And Ericsson nowhere alleges that Apple rejected any Ericsson offer.

Instead of pointing to an actual dispute arising from the parties' negotiations, Ericsson instead alleges that Apple has engaged in a "global strategy to devalue standard essential patents" because "Apple stands to benefit financially if it can devalue essential patent royalty rates." *Id*. ¶¶ 8, 45. Ericsson broadly alleges that Apple has attempted "to assert that the FRAND Commitment requires essential patent owners to base their royalties on an artificial and unduly restrictive royalty base that has been rejected by the industry and courts." *Id*. ¶ 49. The facts Ericsson alleges in support of Apple's purported strategy focus on a statement about FRAND on Apple's website—first posted in 2019.

Ericsson also acknowledges that Apple owns its own "cellular patent portfolio" to which it has added through acquisition, including patents acquired from Intel in 2019. *Id*. ¶ 45.

## C.   Ericsson's Netherlands Anti-Anti-Suit Injunction And SEP Case

In addition to suing Apple here, on September 29, 2021, Ericsson approached a court in the Netherlands on a secret, *ex parte* basis, to obtain both provisional and permanent global anti-anti-suit injunctions preventing Apple from obtaining an anti-suit injunction that would stop Ericsson from asserting its SEPs against Apple.[3] Ericsson obtained such an order on a provisional basis on October 4, 2021, before Apple was aware of the proceedings. In pursuing its requests,

---

[3] When the shoe was on other foot, Ericsson recently decried to this Court the tactic of filing a lawsuit "[i]n secret" in a country where neither party has a "strong connection" because it is "not a corporate home to either [party]," "[n]one of the parties' licensing negotiators reside" there, and "none of the parties' licensing negotiations had any connection" to the forum. Emergency Motion for Temporary Restraining Order and Anti-Interference Injunction Related to Samsung's Lawsuit Filed in the Wuhan Intermediate People's Court of China at 1, *Ericsson Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:20-cv-380-JRG (E.D. Tex. Dec. 28, 2020), ECF 11.

Ericsson misled the Dutch court that Apple was likely to seek such an anti-suit injunction because Apple allegedly had previously done so against Qualcomm.  But Ericsson had it exactly backward; it was Qualcomm, not Apple, that sought the anti-suit injunction.  *See Apple Inc. v. Qualcomm Inc.*, No. 3:17-cv-00108-GPC-MDD, 2017 WL 3966944, at *1 (S.D. Cal. Sept. 7, 2017) ("Before the Court is a motion for anti-suit injunction filed by Defendant and Counterclaim-Plaintiff Qualcomm Incorporated").

Ericsson also informed the Dutch court that, notwithstanding the parties' license, it would seek rulings against Apple that certain of its SEPs are essential to the 4G and/or 5G standard and are valid.  Ericsson attached to its filing two summonses for enforcement of European patents that are licensed under the 2015 License, and informed the court that it intended to file patent actions against Apple for infringement of Ericsson SEPs before the expiration of the parties' license.

On October 18, 2021, after it had the opportunity to hear from Apple at an October 8 hearing, the Dutch court denied Ericsson's request for a provisional anti-anti-suit injunction.  The court concluded that, stripped of its misrepresentations about the *Qualcomm* case, Ericsson had offered no proof that Apple presented a threat of seeking an anti-suit injunction.  On December 16, 2021, the Dutch court also denied Ericsson's subsequent request to enjoin Apple, on a longer-term basis, from pursuing anti-suit injunctions both in the Netherlands and globally.

## III.   ARGUMENT

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Further, "[t]he party asserting jurisdiction bears the burden of proof on a 12(b)(1) motion to dismiss." *Life Partners Inc. v. United States*, 650 F.3d 1026, 1029 (5th Cir. 2011).  In addition, "[w]hen considering a declaratory judgment action, a district court must engage in a three-step inquiry." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).  The court must ask (a) "whether an 'actual controversy' exists between the

parties" in the case; (b) whether it has authority to grant declaratory relief; and (c) whether "to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Id.* Finally, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft*, 556 U.S. at 679. (quoting Fed. R. Civ. P. 8(a)(2)).

Article III of the U.S. Constitution limits federal court jurisdiction to actual "'cases' and 'controversies'" and precludes judicial adjudication of cases involving "a difference or dispute of a hypothetical or abstract character" or "one that is academic or moot." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-241 (1937). A party requesting a declaratory judgment must demonstrate that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation omitted). "[T]he dispute must be definite and concrete, real and substantial, and admit of specific relief through a decree of a conclusive character." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009). A court cannot issue a declaratory judgment to render an advisory opinion on "what the law would be upon a hypothetical set of facts." *MedImmune*, 549 U.S. at 127 (internal citation omitted).

Similarly, a declaratory relief case must also be "ripe" for judicial determination. *Golden v. California Emergency Physicians Med. Group*, 782 F.3d 1083, 1087 (9th Cir. 2015) (ripeness concerns may be implicated in contract dispute where breach or injury yet to occur). Ripeness is "peculiarly a question of timing." *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998)

(internal quotations omitted) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)).  "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required."  *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000) (quoting *New Orleans Public Service, Inc. v. Council of New Orleans*, 833 F.2d 583, 586-87 (5th Cir.1987).

Further, a party seeking a declaratory judgment must, as in all disputes, have standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).  Standing exists if: (1) "the plaintiff has suffered an 'injury in fact' ... [that is] concrete and particularized, [ ] 'actual or imminent,' [and] not 'conjectural' or 'hypothetical'"; (2) there is "a causal connection between the injury and the conduct complained of"; and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Id.* at 560-61 (citations omitted).

A.      **Ericsson's Claim Is Not Ripe Because The 2015 License Is In Force**

Ericsson's claim is not ripe under the 2015 License for two independent reasons.

*First*, the 2015 License remains in force, so Apple is currently licensed to Ericsson's SEPs. While Ericsson alleges that the "negotiations made clear there is a dispute between Apple and Ericsson as to the essentiality, and value, of Ericsson's essential patent portfolio," Compl. ¶ 54, that is merely a hypothetical dispute without legal effect.  The parties agreed on a value for Apple to have rights ███████████████████████████████████████████████████, Apple paid that value to Ericsson; as a result, Apple is currently receiving rights to Ericsson's patents during the term for which Ericsson obtained and enjoyed the agreed-upon value from Apple.  In other words, the in-force 2015 License resolved any dispute between Apple and Ericsson about both the value and essentiality of Ericsson's SEPs for its duration.  Ericsson's claim seeks relief that is thus entirely advisory.  Indeed, the absence of *any* specific allegations in Ericsson's complaint about the commercial impact of the purported dispute confirms that what it seeks is a

- 8 -

theoretical, advisory pronouncement, rather than the resolution of any genuine dispute.  *See id.*
¶ 17 (alleging vaguely that "Apple's allegations of breach threaten Ericsson's reputation and
business").

    ***Second***, the 2015 License provides that ██████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████  Accordingly,

Apple and Ericsson have agreed that, during the term of the 2015 License—and assuming that

Ericsson had not already breached it—████████████████████████████████████████████

████████████████████████  Ericsson is thus incorrect that, prior Ericsson filing its complaint, Apple

presented a "legitimate prospect of imminent litigation and a justiciable dispute regarding whether

Ericsson is prepared to grant a license to Apple on FRAND terms and conditions."  Compl. ¶ 56.

Prior to Ericsson's breach, Apple did not present such a threat because ████████████████████

████████████████████████  2015 License.[4]  Given Ericsson's facial breach of the

2015 License, Apple today asks this Court to intervene; however, Apple does so now only in

response to Ericsson's shredding of the 2015 License.

    Ericsson may hope that the 2015 License will have expired by the time the Court resolves



---

[4] There is also no merit to allegation that "Apple's history of litigation against Ericsson, as well as
other essential patent owners, create a legitimate prospect of imminent litigation and justiciable
dispute regarding whether Ericsson is prepared to grant a license to Apple on FRAND terms and
conditions."  Compl. ¶ 56.  First, Apple's prior suit against Ericsson was not prohibited by the
parties' then-existing agreement.  Indeed, when Ericsson unsuccessfully moved to dismiss that
suit, it did not contend that it should be dismissed on the basis that it was brought in contravention
of the license.  *See Apple Inc. v. Telefonaktiebolaget LM Ericsson, Inc.*, No. 15-CV-00154-JD,
2015 WL 1802467, at *4 (N.D. Cal. Apr. 20, 2015) (rejecting Ericsson's arguments for lack of
subject matter and forum *non conveniens*).  Second, there is zero support for the legal proposition
that past litigation with other SEP holders in different circumstances somehow creates an imminent
threat that Apple would litigate against Ericsson during the pendency of the parties' current
agreement.

this motion so that Ericsson can argue that the 2015 License is not an impediment to the Court's jurisdiction over Ericsson's claims against Apple.  But the 2015 License's expiration would not affect the analysis, because subject matter jurisdiction must exist *when the complaint is filed* and cannot be created by subsequent events.  *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570–71 (2004) ("'[T]he jurisdiction of the court depends on the state of things at the time the action is brought.'…. This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure."); *Vantage Trailers*, 567 F.3d at 748 ("The declaratory judgment plaintiff must establish that this requirement [of an 'actual controversy'] was satisfied at the time the complaint was filed—post-filing conduct is not relevant.").

### B.    Ericsson Has Failed To Allege The Existence Of A Justiciable Dispute And Is Seeking Advisory Opinions

Even if Ericsson's claim were not barred by the 2015 License, Ericsson's Complaint fails to allege an actual controversy as of its filing.  First, instead of pointing to an actual dispute between the parties, Ericsson attempts to elevate a general policy page on Apple's website into a basis for a lawsuit—an attempt which fails.  Second, when it comes to the parties' actual negotiations, Ericsson's allegations fall short of demonstrating a controversy at the time of filing.

#### 1.    *Apple's General FRAND Website Does Not Create A Controversy With Ericsson*

Ericsson's allegations about Apple's general FRAND website—which never once mentions Ericsson—are insufficient to demonstrate a dispute between Apple and Ericsson. Ericsson alleges vaguely that "Apple has publicly disputed whether Ericsson is prepared to grant licenses on FRAND terms to its Essential Patents."  Compl. ¶ 12.  But Ericsson never points to an actual statement from Apple about Ericsson—let alone one sufficient to create a justiciable dispute. Ericsson contends "Apple's allegations of breach threaten Ericsson's reputation and business," *id*. ¶ 17, but Ericsson never identifies where or when Apple alleged that Ericsson breached FRAND.

- 10 -

Notably, Apple's website makes no mention of Ericsson.  *See* Ex. 2 [Apple – A Statement on FRAND Licensing of SEPs].[5]  Ericsson tries to create an inference that Apple's website is directed toward Ericsson because of its timing.  *See* Compl. ¶ 14 ("Apple was aware of Ericsson's March 2017 announcement of its 5G royalty rates.").  That, too, fails.  The dispute Ericsson speaks of, and the alleged cause for this lawsuit is based on a statement made well before "Ericsson reached out to Apple in late 2020 to begin negotiations regarding a new cross-license."  *Id.* ¶¶ 47, 52.  Further, simply because Apple's website postdates Ericsson's announcement of a sticker price for its 5G portfolio is not enough to raise a plausible inference that Apple's statements are directed at Ericsson to give rise to a justiciable dispute.

Try as Ericsson might to suggest that Apple's website is replete with provocative and confrontational positions that have somehow created a justiciable dispute, it cannot do so: the website instead simply contains Apple's views on FRAND that are legally well-supported.  *See* Ex. 2.  For example, Ericsson alleges that "Apple has unilaterally (and legally incorrectly) declared that any licenses for Essential Patents not based on SSPPU violate the ETSI FRAND Commitment."  Compl. ¶ 49.  But as Ericsson also alleges, the website provides that "the royalty base '***should*** be no more than the smallest salable unit [SSPPU] where all or substantially all of the inventive aspects of the SEP are practiced.'"  *Id*. (emphasis added).  And "the ETSI IPR policy neither requires ***nor precludes*** a license with a royalty based on the SSPPU."  *HTC Corp. v. Telefonakitebolaget LM Ericsson*, No. 6:18-CV-00243-JRG, 2019 WL 126980, at *6 (E.D. Tex. Jan. 7, 2019) (emphasis added).

Similarly, Ericsson alleges that Apple has "announced in its Licensing Statement that it has

---

[55] Ericsson cites Apple's FRAND website repeatedly in its Complaint and the website is central to Ericsson's claim; therefore. the Court may consider the website on this motion. *Collins*, 224 F.3d at 498-99.

the sole discretion to decide whether to 'license individual, select groups of, or entire portfolios of SEPs.'"  Compl. ¶ 48.  But, again, Apple's statement simply advocates that position for all SEP licensees: "SEP licensees *should* have the ability to choose whether to license individual, select groups of, or entire portfolios of SEPs."  Ex. 2 (emphasis added).  That view is consistent with this Court's rejection of a theory that "the licensing obligation for ETSI members cuts both ways.  In other words, . . . that, as a member of ETSI, Apple was obligated to 'negotiate a FRAND royalty in good faith' on . . . patents . . . declared standards-essential, regardless of whether the patents were valid and infringed."  *Core Wireless Licensing S.a.r.l. v. Apple Inc.*, No. 6:12-CV-100-JRG, 2015 WL 4775973, at *2 (E.D. Tex. Aug. 11, 2015).

### 2. *Ericsson Does Not Allege A Justiciable Dispute Based On The Parties' Negotiations*

As to the parties' actual negotiations, Ericsson's allegations are insufficient to create a justiciable dispute.  Ericsson only offers vague assertions such as "Apple did not depart from its public commitments or retract any of its public assertions that Ericsson's licensing practices violate FRAND."  Compl. ¶ 53.  But, again, Ericsson does not actually allege that Apple ever directly accused Ericsson of breaching its FRAND commitments or made any statement giving rise to a dispute.  Nor does Ericsson even allege that Apple ever rejected a license offer from Ericsson.  Nor could it.  Ericsson does not contend that it made any commercial offer to Apple until October 4— the very day it filed its Complaint: "On October 4, 2021, Ericsson contacted Apple to reiterate its license offer under its publicly announced 5G multimode royalty rates."  *Id*. ¶ 55.

Ericsson's allegations about Apple's website and the parties' negotiations all fall far short of the type of allegations this Court has found sufficient to state a declaratory judgment claim about a FRAND dispute.  For example, in *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00715-JRG-RSP, 2017 WL 957720 (E.D. Tex. Feb. 22, 2017), *adopted by* 2017 WL 951800 (E.D.

Tex. Mar. 10, 2017), the defendant had provided "express statements regarding [the plaintiff's] alleged breach of FRAND obligations," which the Court found to be "analogous to the type of conduct required for subject-matter jurisdiction over a patent action seeking a declaration of noninfringement." *Id*. at * 1.  Likewise, in *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-CV-00243-JRG, 2018 WL 6617795, at *3 (E.D. Tex. Dec. 17, 2018), the Court found Ericsson's allegations against HTC "sufficiently demonstrate the existence of a real and immediate controversy which supports this declaratory judgment action" where, among other allegations, Ericsson pled that "HTC unilaterally put an end to the parties' negotiations when it filed a lawsuit against Ericsson ... alleg[ing] that Ericsson breached FRAND and did not negotiate with HTC in good faith." *Id*. (alterations supplied).  Ericsson has provided nothing like any of those cases here.

### C.   The Court Should Decline Jurisdiction Over Ericsson's Claim

Finally, even if the Court were to conclude that Ericsson has pled an actual dispute that is ripe for adjudication, it should decline to exercise its jurisdiction to address Ericsson's claim because Ericsson improperly filed its Complaint in breach of the 2015 License in a transparent attempt to have the first-filed case in any litigation between the parties.

The 2015 License prohibits either party during its term ███████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████ Ericsson's Complaint filed in this Court accuses Apple of doing just that.

Ericsson alleges that Apple has a "global strategy to devalue standard essential patents and reduce Apple's royalty payments."  Compl. ¶ 8.  Ericsson also acknowledges that Apple has its own "cellular patent portfolio," but states that "Apple owns a smaller patent portfolio compared to Ericsson and other major contributors to the 3GPP technical specifications" so "[f]or the foreseeable future, Apple expects to be a net payor of royalties for cellular essential patents." *Id*.

- 13 -

¶ 45.  Accordingly, Ericsson alleges that Apple has determined that notwithstanding that Apple owns a significant SEP portfolio, that it "stands to benefit financially if it can devalue essential patent royalty rates."  *Id.*  Ericsson thus accuses Apple of seeking to devalue all SEPs—including Apple's own significant portfolio.

Ericsson repeatedly alleges that Apple's public positions on FRAND violate Apple's FRAND commitments or obligations, including:

- "Apple's self-proclaimed and highly publicized FRAND licensing principles (many of which have been expressly rejected by courts and by the industry)," *id.* ¶ 9;

- Apple "requiring royalties be calculated on the now-rejected SSPPU theory," *id.* ¶ 10;

- "Nor has Apple retreated from its prior public assertions that the only way to comply with FRAND is to adhere to Apple's self- declared methodology for licensing essential patents, despite court decisions that flatly rejected Apple's approach to cellular essential patent licensing," *id.* ¶ 16;

- "Another Apple devaluation tactic is to assert that the FRAND Commitment requires essential patent owners to base their royalties on an artificial and unduly restrictive royalty base that has been rejected by the industry and courts," *id.* ¶ 49; and

- "Apple's inflexible licensing position has been rejected by the industry, by ETSI, and by the courts," *id.*

The Court should decline to exercise discretionary jurisdiction in a case where one party has violated an agreement with the other in order to bring the claim and is using its own wrongful refusal to engage in good faith negotiations as a manufactured premise for jurisdiction.  The Court should not condone Ericsson's opportunistic and non-FRAND conduct of preemptively suing Apple several months in advance of the expiration of their agreement and thus in breach of the agreement in a transparent attempt to gain leverage over Apple during negotiations.  Indeed, the Fifth Circuit has repeatedly recognized that a declaratory judgment plaintiff's attempt to gain an

unfair strategic advantage by preempting a claim in another forum is a proper consideration in declining to exercise judgment.  *See St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 591 (5th Cir. 1994) (in deciding whether to exercise discretion over declaratory judgment action, court should consider, among other factors, "whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist"); *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 (5th Cir. 1983) ("There is sufficient evidence here to support the district court's conclusion that Mission's action was in anticipation of Puritan's California suit."); *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir. 1967) (in declining jurisdiction over declaratory judgment action, district court properly considered that action was brought in anticipation of a filing in another forum).  As the Supreme Court has explained, declaratory judgment actions that merely seek to "gain a litigation advantage" by asking the court to "determine a collateral legal issue governing certain aspects of [a] pending or future suit[]" are not allowed.  *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998); *see also Urban Health Care Coalition v. Sebelius*, 853 F. Supp. 2d 101, 113 (D.D.C. 2012) (dismissing action where the only alleged benefit was improving a party's "bargaining leverage" in negotiations).

As set forth in Apple's complaint filed today with this Court, Apple is willing to litigate in this Court a proper claim regarding Ericsson's compliance with its FRAND commitments, but it should be able to do so as a plaintiff in a properly-filed action, not as a defendant to Ericsson's deficient Complaint.

## IV.    CONCLUSION

For the reasons stated above, Apple respectfully requests that the Court dismiss, with prejudice, Ericsson's Complaint.

DATED: December 17, 2021

Respectfully submitted,

*/s/ Melissa R. Smith*
Melissa R. Smith
State Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

Ruffin Cordell
cordell@fr.com
State Bar No. 04820550
FISH & RICHARDSON P.C.
1000 Maine Ave SW, Suite 1000
Washington, DC 20024
Telephone: 202-783-5070
Facsimile: 202-783-2331

Benjamin C. Elacqua
State Bar No. 24055443
elacqua@fr.com
FISH & RICHARDSON P.C.
1221 McKinney Street, Suite 2800
Houston, TX 77010
Telephone: 713-654-5300
Facsimile: 713-652-0109

Betty Chen
State Bar No. 24056720
bchen@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: 650-839-5070
Facsimile: 650-839-5071

Joseph J. Mueller (*pro hac vice* forthcoming)
Timothy D. Syrett (*pro hac vice* forthcoming)
joseph.mueller@wilmerhale.com
timothy.syrett@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: 617-526-6000
Facsimile: 617-526-5000

Mark D. Selwyn (*pro hac vice* forthcoming)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real #400
Palo Alto, CA 94306
Telephone: 650-858-6000
Facsimile:  650-858-6100

***Attorneys for Plaintiff Apple Inc.***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Plaintiffs' counsel of record were served with a true and correct copy of the foregoing document by electronic mail on December 17, 2021.

*/s/ Melissa R. Smith*

Melissa R. Smith