# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **ERICSSON INC. AND TELEFONAKTIEBOLAGET LM ERICSSON,**<br><br>Plaintiffs,<br><br>vs.<br><br>**APPLE INC.,**<br><br>Defendant. | **Civil Action No.  2:21-cv-376**<br><br>**PUBLIC REDACTED** |

## ERICSSON'S SURREPLY IN OPPOSITION TO APPLE'S MOTION TO DISMISS

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................. 1

II.  ARGUMENT ........................................................................................................................ 3

   A.   Ericsson's Original Complaint Presented a Live Controversy for the Court to Resolve.... 3

   B.   The Expired 2015 License Never Divested the Court of Subject-Matter Jurisdiction to Hear a FRAND Dispute Relating to a New Cross-License ....................................................... 7

   C.   Any Gamesmanship Is of Apple's Creation, as it Ignores Law and Procedure in its Transparent Push to Speak First as the Plaintiff in the Parties' FRAND Dispute ...................... 9

III. CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chevron U.S.A., Inc. v. Traillour Oil Co.*,
　987 F.2d 1138 (5th Cir. 1993) ...................................................................................................6

*Dish Network Corp. v. TiVo, Inc.*,
　604 F. Supp. 2d 719 (D. Del. 2009) ...........................................................................................4

*Domain Prot., L.L.C. v. Sea Wasp, L.L.C.*,
　20-40411, 2022 WL 123408 (5th Cir. Jan. 13, 2022) ................................................................8

*Frye v. Anadarko Petroleum Corp.*,
　953 F.3d 285 (5th Cir. 2019) ..................................................................................................6, 7

*Huawei Techs. Co. v. T-Mobile US, Inc.*,
　No. 2:16-CV-1100715-JRG-RSP, 2017 WL 957720 (E.D. Tex. Feb. 22, 2017) ......................5

*Kelly Inv., Inc. v. Cont'l Common Corp.*,
　315 F.3d 494 (5th Cir. 2002) .....................................................................................................9

*MedImmune, Inc. v. Genentech, Inc.*,
　549 U.S. 118 (2007) ...............................................................................................................6, 8

*New England Ins. Co. v. Barnett*,
　561 F.3d 392 (5th Cir. 2009) .....................................................................................................9

*PanOptis Patent Mgmt., LLC v. Blackberry Corp.*,
　2:16-CV-00059-JRG-RSP, 2017 WL 780885 (E.D. Tex. Feb. 10, 2017),
　*adopted by*, 2017 WL 780880 (E.D. Tex. Feb. 28, 2017) ....................................................5, 7

*Sherwin-Williams Co. v. Holmes County*,
　343 F.3d 383 (5th Cir. 2003) ...............................................................................................9, 10

I.       INTRODUCTION

When Ericsson filed its original complaint in October, for a single count that Ericsson had complied with FRAND, a live dispute existed between the parties regarding Ericsson's FRAND compliance. Ericsson publicly announced an *ex ante* 5G rate; Apple and the industry incorporated Ericsson's 5G technology into the standard; and then Apple publicly announced its commitment to its FRAND positions—positions that have been rejected by courts—cementing its denial of Ericsson's licensing terms "now and in the future." Unsurprisingly, Apple carried through with its public promise in the parties' confidential negotiations: Apple would not concede to the essentiality, validity, or enforceability of any of the hundreds of Ericsson 4G and 5G claim charts exchanged during negotiations. And Apple did not retract or soften any of its publicly announced FRAND positions. In other words, Apple clearly and unequivocally rejected Ericsson's longstanding offer to license Ericsson's 5G SEPs at $5 per 5G/NR multimode compliant handset.

Apple's filing of a mirror-image lawsuit against Ericsson in this Court (while the 2015 License was in force) only confirmed what was obvious months earlier when Ericsson filed suit—there was a ripe dispute about whether Ericsson complied with its FRAND obligations. Apple says that it was only "Ericsson's improper suit that changed that dynamic and gave rise to the controversy addressed by Apple's proper suit," but that is nonsensical. Dkt. No. 23, p. 3. Apple did not anchor its breach of FRAND claim on Ericsson's October 4 lawsuit. Instead, Apple squarely alleged that Ericsson's offer to Apple—as reflected in Ericsson's 2017 *ex ante* statement regarding its 5G rate—"***is not FRAND***" and "***was not made in good faith***"—the mirror-image of what Ericsson's first-filed suit addresses. Apple Action, Dkt. No. 2, ¶¶ 117, 123, 129 (emphasis added). Apple's inability to point to a superseding event that would make its FRAND claims justiciable without also making Ericsson's first-filed FRAND claim justiciable is fatal to Apple's motion to dismiss.

1

Desperate to dismiss Ericsson's first-filed complaint so that it can position itself as the plaintiff in the parties' FRAND dispute, Apple ignores or mischaracterizes the facts and the law. Apple doubles down on its argument that its public "core FRAND principles" did not contribute to a justiciable dispute between the parties because Apple's FRAND principles "refer[] generally to the 'cellular standards arena,'" and not to any disagreement with Ericsson specifically. Yet Apple cannot distinguish its own argument from 2015—when it sued Ericsson before the parties' 2008 License expired—that a generic Ericsson press release mentioning "compan[ies] using cellular connectivity" but *never mentioning Apple* gave rise to a case or controversy between the parties. And Apple ignores this Court's prior ruling that a declaratory-judgment claim that a party complied with FRAND is justiciable even when no threat was made to sue the party for breach of FRAND.

Fundamentally, Apple's position is that there could not have been a live controversy between the parties regarding Ericsson's FRAND compliance until Apple sued Ericsson for breach of FRAND. This defies logic, caselaw, and Apple's own prior (successful) litigation positions. Under Apple's position, declaratory-judgment actions would be rendered nullities—after all, if the action is only ripe after the declaratory-judgment defendant filed suit, what use is the declaratory-judgment action in the first place? The caselaw confirms this logic, as Ericsson was not required to wait and see what Apple would do faced with the parties' adverse positions before asking the Court for a declaration that Ericsson complied with FRAND. Apple knows and agrees with this position—when it sued Ericsson before the parties' 2008 License expired, Apple argued that its suit was "clearly ripe" because a "declaratory plaintiff like Apple need not wait until the patentee is capable of bringing suit." Apple does not even attempt to explain its about-face.

Apple's ancillary arguments fare no better. Apple characterizes Ericsson's amended complaint as an attempt to "repair" a "deficient declaratory judgment action." Apple's criticism is manufactured. Ericsson's amended complaint simply adds additional causes of action against Apple now that the parties' 2015 License expired. Ericsson is not trying to use the amendment to "repair" its original claim because its original claim presented a live controversy as filed. Ericsson is simply avoiding claim-splitting by filing its breach of FRAND claim in this proceeding (unlike Apple, which chose instead to violate the compulsory-counterclaim rule and improperly split its counterclaim into a later-filed proceeding). *See* Apple Action, Dkt. No. 14. While Apple accuses Ericsson of gamesmanship, it is Apple who is transparently attempting to game the parties' FRAND dispute (contrary to law) so that it can speak first as the plaintiff. Apple cites no compelling reason for the Court to decline jurisdiction over Ericsson's first-filed suit.

As Ericsson explained in its response, once the Court grants Ericsson's motion for leave to amend its complaint, Apple's motion to dismiss should be denied as moot. Dkt. No. 19, p. 5. Regardless, Apple's reply confirms that its motion to dismiss can also be denied on the merits.

**II.     ARGUMENT**

Nothing in Apple's reply changes the fact that Ericsson's declaratory-judgment action was ripe when filed. Because Ericsson's claim presented a live controversy for the Court to resolve, and because Apple has provided no reason under the applicable test for why the Court should decline to exercise its jurisdiction, Apple's motion fails.

**A.     Ericsson's Original Complaint Presented a Live Controversy for the Court to Resolve**

Ericsson's response outlined the applicable legal test and explained how, under all the facts and circumstances alleged, Ericsson's original complaint presented a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the

3

issuance of a declaratory judgment. Dkt. No. 19, pp. 10-15. Ericsson also explained how—under binding caselaw—the dispute between the parties was "definite and concrete" and "real and substantial" when Ericsson filed its original complaint on October 4. Dkt. No. 19, pp. 11-13.

Apple's reply ignores this caselaw and the applicable standard altogether. Instead, Apple surmises that Ericsson did not plead facts showing a "plausibility of 'entitlement to relief.'" Dkt. No. 23, p. 5. Apple is wrong, but its argument is also misdirected—it did not file a motion to dismiss under Rule 12(b)(6), but a motion challenging the Court's subject-matter jurisdiction under Rule 12(b)(1). *See generally* Dkt. No. 7; Dkt. No. 23.

When Apple does make arguments related to subject-matter jurisdiction, it misconstrues the facts and the law. Importantly, Apple *admits* that "Ericsson pleads that Apple has set forth [in its public Licensing Statement] a general view of FRAND ***different than the general view Ericsson advocates*** . . . . " Dkt. No. 23, p. 5 (emphasis added). Coupled with Ericsson's well-pled allegation that during the parties' confidential negotiations, "Apple ***did not depart from its public commitments*** or retract any of its public assertions that Ericsson's licensing practices violate FRAND," this plainly presents a live dispute between the parties over whether Ericsson complied with FRAND. Dkt. No. 1, ¶ 53 (emphasis added). This, along with Apple's history of filing suit against Ericsson even while a license remains in force, clearly establishes a ripe case or controversy. *See, e.g.*, *Dish Network Corp. v. TiVo, Inc.*, 604 F. Supp. 2d 719, 723–24 (D. Del. 2009) ("Based on the parties' litigation history and public statements made by TiVo regarding EchoStar's redesigned products, the Court is satisfied that there is such a controversy.").

Still, Apple claims that without a plausible allegation that it would "act against Ericsson on that difference by suing Ericsson for breach of FRAND," the Court does not have jurisdiction to resolve the dispute. Dkt. No. 23, pp. 5-6 (emphasis removed). Factually, Apple is wrong:

4

Ericsson pled that Apple's conduct in the negotiations for a new cross-license "parallel[ed] its conduct in the parties' negotiations that preceded the 2015 cross license"—where "Apple filed a surprise suit against Ericsson" despite Ericsson's 2008 license with Apple still being in force—creating a "a legitimate prospect of imminent litigation." Dkt. No. 1, ¶ 56. Ericsson also pled that in the parties' confidential negotiations, Apple did not depart from its public commitments or retract any of its public assertions that Ericsson's licensing practices violate FRAND, nor did Apple concede to the essentiality, validity, or enforceability of any of the Ericsson 4G and 5G claim charts exchanged during negotiations. Dkt. No. 1, ¶¶ 53-54. Taking Ericsson's factual allegations as true (as they must be), Ericsson alleged that Apple would act against Ericsson based on Apple's clear belief that Ericsson had not complied with FRAND.[1]

Apple's argument is also legally erroneous. Whether Apple was going to sue Ericsson for breach of FRAND right before Ericsson filed suit is irrelevant to the question of whether a justiciable dispute existed when Ericsson filed suit. Tellingly, Apple does not address this Court's holding in *PanOptis Patent Mgmt., LLC v. Blackberry Corp.*, 2:16-CV-00059-JRG-RSP, 2017 WL 780885 (E.D. Tex. Feb. 10, 2017), *adopted by*, 2017 WL 780880 (E.D. Tex. Feb. 28, 2017). As Ericsson explained in its response, the Court in *PanOptis* held that PanOptis's declaratory-judgment claim—that it "complied with its FRAND obligations"—presented a live controversy between the parties *even though* Blackberry had never threatened PanOptis with a claim for breach of FRAND. Dkt. No. 19, p. 14; *see also Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-1100715-JRG-RSP, 2017 WL 957720, at *1 (E.D. Tex. Feb. 22, 2017) (finding a live controversy

---

[1] Apple says that Ericsson never called Apple's Licensing Statement a "commitment strategy" in its complaint. Dkt. No. 23, p. 5. In addition to being irrelevant to its argument, Apple's critique misses the mark. Ericsson explained in its complaint how Apple's public Licensing Statement was a negotiating tactic where Apple drew "a line in the sand" and promised to remain "committed to [its] core FRAND principles, now and in the future." Dkt. No. 1, ¶ 47.

5

existed over Huawei's analogous claim that it complied with FRAND and that two statements T-Mobile made about Huawei's past offers "prompted" Huawei's FRAND claim.).

Further, as Ericsson explained in its response, it "need not actually expose [itself] to liability" before asserting its declaratory-judgment claim. *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 294-95 (5th Cir. 2019); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 134 (2007) (explaining that a plaintiff need not expose itself to harm before seeking a declaration of actively contested legal rights); *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1154 (5th Cir. 1993) ("The purpose of the Declaratory Judgment Act is to settle 'actual controversies' before they ripen into violations of law or breach of some contractual duty." (quotation omitted)). Apple overlooks this well-established principle and ignores this caselaw. Apple even ignores its own statement—made in its 2015 lawsuit against Ericsson, which it filed while the 2008 License was in force—that a "declaratory plaintiff like Apple need not wait until the patentee is capable of bringing suit" to file its declaratory-judgment action. Dkt. No. 19-4, p. 7.

Apple unsuccessfully tries to explain away its statement from its 2015 lawsuit against Ericsson that a generic Ericsson press release mentioning "company[ies] using cellular connectivity" (but ***never mentioning Apple***) "easily" gave rise to a case or controversy between the parties. Apple says that its 2015 argument was, coupled with the parties' negotiation conduct, just additional evidence of a controversy. Dkt. No. 23, p. 5. But this is not a distinction at all—as alleged in Ericsson's original complaint, it was Apple's public pronouncement *and* the parties' negotiations taken together that gave rise to the live dispute when Ericsson filed suit. Dkt. No. 1, ¶¶ 44-56; *see Frye*, 953 F.3d at 294 (explaining that evaluating whether a live controversy exists requires consideration of "the facts alleged, under all the circumstances").

6

### B. The Expired 2015 License Never Divested the Court of Subject-Matter Jurisdiction to Hear a FRAND Dispute Relating to a New Cross-License

Nothing about the expired 2015 License makes Ericsson's original claim unripe.

Apple continues to misunderstand the scope of Ericsson's declaratory-judgment claim—Ericsson asked the Court for a declaration that it complied with FRAND in its offer to Apple for a *new* cross license. Although Apple says that "even if [it] disputed the essentiality or value of Ericsson patents, during the term of the [2015] license that dispute had been conclusively resolved," Dkt. No. 23, p. 4, Apple is wrong. The expired 2015 License did not resolve any dispute over Ericsson's FRAND compliance with respect to a *new* cross license; the value of Ericsson patents in relation to a new license clearly is disputed by Apple as Apple is now profiting from Ericsson's patents without a license.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

As explained in Ericsson's response and in its original complaint, the parties undoubtedly took adverse positions regarding Ericsson's FRAND compliance when Ericsson filed suit. *See* Dkt. No. 19, pp. 8-9, 11-12. And the caselaw confirms that Ericsson "need not actually expose [itself] to liability" before asserting its declaratory-judgment claim. *Frye*, 953 F.3d at 294-95; *PanOptis*, 2017 WL 780885 (finding live controversy over PanOptis's analogous declaratory-judgment claim even though Blackberry had never threatened PanOptis with a claim for breach of FRAND).

Apple should know that its ripeness argument is unavailing. When it sued Ericsson in 2015 before the parties' 2008 License expired, Apple argued that its suit was "clearly ripe" because a "declaratory plaintiff like Apple ***need not wait until the patentee is capable of bringing suit***" for the controversy to be "sufficiently concrete." Dkt. No. 19-4, p. 7 (emphasis added). Apple's argument in 2015 prevailed, as the Northern District of California court explained that Apple's suit was ripe under *MedImmune*. Dkt. No. 19-6, p. 6 n.2.

Apple does not try to explain its about-face on this point; instead, Apple tries to make trivial factual distinctions between this case and *MedImmune*. In doing so, Apple loses sight of *MedImmune*'s holding—the Supreme Court explained that a declaratory-judgment plaintiff need not "destroy a large building, bet the farm, or (as here) risk treble damages and the loss of 80 percent of its business before seeking a declaration of its actively contested legal rights" under Article III. *MedImmune*, 549 U.S. at 134. Apple's alleged distinction between who is the licensee and the licensor does not affect the import of the Supreme Court's holding—Ericsson did not need to wait for the 2015 License to expire before bringing its claim that it complied with FRAND.

And even if Apple's various interpretations of the 2015 License were correct, any argument related to what the 2015 License did or did not permit does not implicate the subject-matter jurisdiction of the Court. *See id.* at 135-36 ("Of course even if respondents were correct that the licensing agreement . . . precludes this suit, the consequence would be that respondents win this case *on the merits—not* that the very genuine contract dispute disappears, so that Article III jurisdiction is somehow defeated." (emphasis in original)); *Domain Prot., L.L.C. v. Sea Wasp, L.L.C.*, 20-40411, 2022 WL 123408, at *3 (5th Cir. Jan. 13, 2022) (collecting cases and explaining: "Whether a party has a 'contractual right to bring this suit' is not a question of Article III standing. . . . 'Contractual standing' is instead an issue of contract interpretation that goes to the merits of a

8

claim."). So while Apple's argument is substantively incorrect, it is also not relevant to its Rule 12(b)(1) motion to dismiss. Ericsson explained this in its response, *see* Dkt. No. 16 n. 6, and Apple has no retort.

    C.    **Any Gamesmanship Is of Apple's Creation, as it Ignores Law and Procedure in its Transparent Push to Speak First as the Plaintiff in the Parties' FRAND Dispute**

In addition to failing to show that the Court lacks subject-matter jurisdiction, Apple fails to show that the Court can relinquish that jurisdiction. In its reply, Apple does not rebut the fact that it ignored all but one of the seven *Trejo* factors, including the factor that the "lack of a pending parallel state proceeding . . . weighs strongly against dismissal." *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 394 (5th Cir. 2003).[2] Instead, Apple doubles down on its flawed arguments.

Apple points to Ericsson's motion for leave to amend its complaint and uses the mere fact of its existence to accuse Ericsson of engaging in gamesmanship. Apple's accusation falls flat. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Contrary to Apple's accusations, nothing in Ericsson's amended complaint seeks to "repair" Ericsson's original declaratory-judgment claim—indeed, Ericsson's original claim needs no repairing.

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

[2] Ericsson's amended complaint also changes the standard of review under part three of the governing *Orix* test—instead of applying the seven *Trejo* factors (or *Brillhart* factors as they are also called), the Court now applies the more-restrictive *Colorado River* factors since Ericsson's amended complaint seeks coercive relief in addition to seeking declaratory relief. Dkt. No. 18-1, pp. 20-24; *Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 497 n.4 (5th Cir. 2002); *New England Ins. Co. v. Barnett*, 561 F.3d 392, 397 (5th Cir. 2009). Even analyzing just the *Trejo* factors though, Apple does not demonstrate that the Court should decline jurisdiction.

9



Finally, Apple continues to assert that Ericsson's complaint was nothing more than an anticipatory suit or an attempt to "gain precedence in time."[3] Dkt. No. 7, p. 19; Dkt. No. 23, p. 8. Apple both overlooks the caselaw Ericsson provided explaining how that *Trejo* factor is inapplicable here, *see* Dkt. No. 19, p. 18, and contradicts its argument that there was no dispute between the parties when Ericsson filed suit. After all, how could Ericsson's suit have been anticipatory ***if there was no dispute over Ericsson's FRAND compliance at the time Ericsson filed?*** Apple does not explain this inconsistency.[4]

### III. CONCLUSION

For the forgoing reasons, Ericsson asks the Court to deny Apple's motion to dismiss.

---

[3] Apple also still misunderstands what "gain[ing] precedence in time" means in this context: It relates to an attempt to improperly or unfairly secure a federal forum *over a state forum*—clearly, an irrelevant concern here. *See Sherwin-Williams*, 343 F.3d at 390-91.

[4] Apple also claims that Ericsson is trying to "undermine this Court's ability to resolve the parties' dispute" by seeking to enforce its patent rights against Apple, an unlicensed infringer. As Ericsson has already explained, *see* Apple Action, Dkt. No. 19, Apple's attempt to cast Ericsson as the villain is unpersuasive. In addition to being untethered to reality, Apple's assertion is irrelevant to the merits of its Rule 12(b)(1) motion to dismiss—once again, Apple is simply trying to paint Ericsson in a negative light for enforcing its patent rights against an unlicensed infringer.

10

| | |
|---|---|
| Dated: February 2, 2022 | Respectfully Submitted, |
| Theodore Stevenson, III (Lead Attorney)<br>Texas State Bar No. 19196650<br>ted.stevenson@alston.com<br>**ALSTON & BIRD**<br>2200 Ross Avenue, Suite 2300<br>Dallas, TX 75201<br>Telephone: (214) 922-3507<br>Facsimile: (214) 922-3899<br><br>Christine Woodin<br>Texas State Bar 24199951<br>cwoodin@hueston.com<br>**HUESTON HENNIGAN LLP**<br>523 West 6th St., Suite 400<br>Los Angeles, CA 90014<br>Telephone: (213) 788-4099<br>Facsimile: (888) 775-0898 | /s/ *Nicholas Mathews*<br>Nicholas Mathews<br>Texas State Bar No. 24085457<br>nmathews@McKoolSmith.com<br>**MCKOOL SMITH, P.C.**<br>300 Crescent Court Suite 1500<br>Dallas, TX 75201<br>Telephone: (214) 978-4000<br>Facsimile: (214) 978-4044<br><br>Blake Bailey<br>Texas State Bar No. 24069329<br>bbailey@mckoolsmith.com<br>**MCKOOL SMITH, P.C.**<br>600 Travis Street, Suite 7000<br>Houston, TX 77002<br>Telephone: (713) 485-7300<br>Telecopier: (713) 485-7344<br><br>Samuel F. Baxter<br>Texas State Bar No. 01938000<br>sbaxter@mckoolsmith.com<br>**MCKOOL SMITH, P.C.**<br>104 E. Houston Street, Suite 300<br>Marshall, TX 75670<br>Telephone: (903) 923-9000<br>Telecopier: (903) 923-9099<br><br>**ATTORNEYS FOR PLAINTIFFS ERICSSON INC. AND TELEFONAKTIEBOLAGET LM ERICSSON** |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on February 2, 2022.

/s/ *Nicholas Mathews*
Nicholas Mathews