**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **ERICSSON INC. AND**<br>**TELEFONAKTIEBOLAGET LM ERICSSON,**<br><br>       **Plaintiffs,**<br><br>   **vs.**<br><br>**APPLE INC.,**<br><br>      **Defendant.** | **Civil Action No.  2:21-cv-376**<br><br><br>**PUBLIC REDACTED** |

<u>**ERICSSON'S MOTION TO CONFIRM APPLE'S AGREEMENT TO BE BOUND**</u>

## I.      INTRODUCTION

This is a breach of contract (FRAND) case that presents claims from both parties related to whether Ericsson's 4G and 5G cellular-licensing offer to Apple complies with Ericsson's FRAND commitment. In its Complaint and again at the Scheduling Conference, Apple has observed an asymmetry: By its terms, the FRAND commitment requires Ericsson (as the patent owner) to offer FRAND terms to Apple, but the FRAND commitment gives Apple (as the implementer) the prerogative to decline the offer. Nonetheless, Apple has repeatedly represented that it "agrees to be bound" by the FRAND ruling of this Court. *E.g.*, *Apple v. Ericsson*, 2:21-cv-00460-JRG (E.D. Tex.), Dkt. No. 16, pp. 2, 4; Dkt. No. 20, pp. 1-3.

Yet Apple has been vague about what it means *precisely* when it says it "agrees to be bound." A party need not *agree* to be bound by the final judgment of this Court—all parties to this case are obviously bound by the judgment. So, if Apple's agreement to be bound is to have *any* significance, it must represent something more than merely an acknowledgement that Apple will abide by this Court's final judgment. Given this, the obvious, common-sense meaning of Apple's agreement to be bound is that, if the factfinder decides Ericsson's offer complies with FRAND, Apple agrees to abide by that result and perform under the terms of that offer. This understanding is consistent with Apple's global actions: Apple has represented to courts worldwide that this case will result in a binding license agreement.

At the March 16 Scheduling Conference—after Apple again touted its agreement to be "bound"—Ericsson put the meaning of this agreement squarely before the Court. Ericsson observed, and argued, that if Apple's promise to be "bound" meant something more than a commitment to abide by the final judgment, then Apple must be agreeing to accept and perform under the terms of Ericsson's offer if the factfinder determines that offer to be FRAND. Mathews Decl., Ex. 1, pp. 3-4. In other words, by this "agreement to be bound," Apple is relinquishing its

prerogative to decline Ericsson's offer if Ericsson's offer is adjudicated FRAND. In direct response to this at the hearing, Apple embraced Ericsson's understanding and stated that Ericsson's point "is crucial," and in an attempt to "try to be as clear" as possible, Apple promised it is "here"; is "ready to go"; and is choosing to litigate this case in a "binding fashion where Apple will be bound." Ex. 1, pp. 4-5. Despite having an opportunity to clarify on the record, Apple never disputed Ericsson's statement of what it would mean for Apple to truly be "bound." And Apple gave no indication that the commitment Apple was making differed in any way from how Ericsson had characterized it.

The ink was barely dry when Apple started to backtrack. On March 25, nine days later, Apple sent a letter to Ericsson, retreating from its position at the Scheduling Conference. *See* Exs. 2-3. Not only did Apple's March 25 letter propose a radically different set of terms from the terms of Ericsson's offer—disregarding the framework that had been discussed at the hearing— but Apple's terms are legally defective and not capable of resolution in a breach of FRAND case. More importantly, Apple's new position completely misses the point that it is *Ericsson's offer to Apple that is the basis of this case and will be tested for FRAND compliance.*

At the Scheduling Conference, the Court cautioned the parties that "I want to know what the terrain that we're about to trod over looks like before I get halfway across it. So I'm just telling you now, that's something I have a focused concern on." Ex. 1, p. 5. It is in view of the Court's admonition that Ericsson brings this motion before the Court.

Subject to the Court's approval, Ericsson requests that the Court order Apple to confirm that Apple is committed to be bound by the result of the FRAND adjudication on Ericsson's offer, that is, that Apple has committed to accept and perform under the terms of Ericsson's offer if it is found to be FRAND.

## II.      ARGUMENT

### A.      Ericsson's Offer to Apple Is the Subject of Both Parties' FRAND Claims

In this case, Ericsson requests a declaration that its offer to Apple for 4G and 5G essential patents complies with FRAND. Apple contends the opposite and has a mirror-image counterclaim that Ericsson's offer violated FRAND. Regardless of what party's claims are considered, the central issue in this case is whether Ericsson's offer to Apple would result in a FRAND license.

The FRAND commitment promulgated by the European Telecommunications Standards Institute ("ETSI") is contractual in nature. Ericsson has voluntarily agreed to adhere to the ETSI FRAND commitment for its standard essential patents ("SEPs"). Specifically, Ericsson has agreed that "it is prepared to grant irrevocable licences on fair, reasonable and non-discriminatory ("FRAND") terms and conditions."[1]

Ericsson extended a FRAND-compliant offer to Apple on October 4, 2021 by email. That cross-license offer provided a running-royalty rate under Ericsson's standards-essential patents that would cover Apple's 4G and 5G compliant products. For the avoidance of any question as to the other material terms that would form the parties' global cross license, on November 2, 2021, Ericsson sent Apple a standard, fully integrated license agreement with all the other material terms included.

This license offer will be the focal point of the trial in this case. If the factfinder determines that Ericsson's license offer to Apple would have resulted in a license with FRAND terms and conditions, then Ericsson has complied with its contractual representation that it is "prepared to grant" licenses on FRAND terms.

---

[1] https://www.etsi.org/images/files/IPR/etsi-ipr-policy.pdf, § 6.1.

B.      **The Legal Effect of Apple's "Agreement to be Bound"**

Like any litigant before a court of competent jurisdiction, Apple is bound to the final judgment of the Court—no agreement from Apple is needed for that to be true. But being "bound" by the Court's final ruling and being "bound" to accept an offer that has been adjudicated to be FRAND-compliant are two different things. Apple observes this asymmetry at footnote 14 of its counterclaims, stating that the FRAND commitment requires a patent owner to make a FRAND offer but does not require the implementer of the standard to accept it. *See* Dkt. No. 47, p. 13 n.14; Ex. 1, pp. 4-5. The patent owner complies with its FRAND commitment by offering a license on FRAND terms, but the implementer has the prerogative to reject the offer and to remain unlicensed. That said, refusing to take a license subjects the implementer to patent infringement suits across the world.

After Ericsson made its FRAND offer to Apple, which Apple rejected, the parties' cross license expired in January 2022. Both parties filed patent infringement cases against the other in the United States and foreign countries. Anxious to avoid the consequences of rejecting Ericsson's FRAND offer and infringing Ericsson's patents, Apple asked various courts worldwide to stay or dismiss Ericsson's patent infringement cases by pointing to this litigation and representing that Apple's agreement to be "bound" effectively mooted the other cases.

When given a brief opportunity to raise issues of concern at the March 16 Scheduling Conference, Apple's counsel spoke first and immediately underscored Apple's commitment to be "bound" to the outcome of this litigation and that it had voluntarily agreed to litigate this matter in the Eastern District of Texas. Ex. 1, pp. 2-3. After hearing Apple's position, the Court requested Ericsson's view on the issue. Ex. 1, p. 3. Ericsson's counsel unambiguously stated that Apple's commitment to be "bound" should mean that Apple would perform under Ericsson's offered contract if that offer is adjudicated FRAND:

4

> [COUNSEL FOR ERICSSON] And so what we believe is that if Apple is willing – we've made an offer. We made an offer on October [4th], a financial offer, and followed up with a fully integrated contract on November [2nd]. If Apple is saying in this case that if that is found by the Court or the jury to be FRAND, that they'll enter into that contract and abide by it, then yes, we will agree to be bound. And I think that's what they intended with that, and I think that would be the outcome of the case. But what's important are the terms and conditions, not just the rate.

Ex. 1, p. 4.

Apple's counsel immediately replied, recognizing Ericsson's point "is crucial" and reiterating Apple's agreement to be bound in response:

> [COUNSEL FOR APPLE] Mr. Stevenson is right that we have said—and I actually was alluding to this in the remarks with which I began—that there's no legal contractual requirement on prospective licensees to take a FRAND license. If they don't do it, they proceed at their own risk with respect to infringement claims. But notwithstanding the fact that Apple is not legally required to engage in portfolio rate setting and can't be forced to do it, we're choosing to do it before Your Honor and to be bound by it. So as an election by Apple to resolve this dispute, we are here; we are here to do global rate setting in a binding fashion where Apple will be bound. So we're trying to make it as clear as we possibly can that we are not under any definition of the term 'unwilling licensee', a party that would fall in that category. We are here; we are ready to go.

Ex. 1, pp. 4-5.

For Apple's agreement to be "bound" to be anything more than a ruse, it had to mean that if Ericsson's offer is adjudicated to be FRAND, Apple would relinquish its prerogative to reject the offer and remain unlicensed. And from Ericsson's standpoint, Ericsson agreed at the Scheduling Conference that even though its offer had already been rejected by Apple, Ericsson would leave that offer open so that, if the offer is found FRAND-compliant, the terms will still be available to Apple. Rather than back away from Ericsson's statement, Apple responded that it is "here," "ready to go," and would proceed "in a binding fashion where Apple will be bound." This on-the-record statement from Apple's counsel gave clarity to what Apple was agreeing to be "bound" to: not just the Court's final judgment, but the terms of Ericsson's offer if that offer is adjudicated to be FRAND.

**C.      Apple Retreats from Its Commitment and Insists on a Legally Deficient Licensing Framework**

Apple's apparent confirmation that it would be bound to the terms of Ericsson's offer lasted just nine days. On March 25, Apple sent a letter to Ericsson ███████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████

In its March 25 letter, Apple demands ██████████████████████████████████

████████████████████████████████████████████████████████████ Not only does this contradict what Apple agreed to at the March 16 Scheduling Conference, but Apple troublingly ignores Ericsson's offer—the only offer that is the subject of both parties' FRAND claims—in its March 25 letter. Instead, Apple says:

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████ It is surprising that Apple never alluded to this impending offer, with onerous terms inconsistent with Ericsson's offer, at the Scheduling Conference just nine days earlier.

Further, Apple's March 25 Offer is legally deficient for multiple reasons. *First*, this is a breach of contract case in which Apple is challenging Ericsson's offer—which Apple rejected—as violating Ericsson's contractual FRAND commitment. The terms of Apple's counteroffer are wholly irrelevant to the issue of whether Ericsson's offer to Apple complied with FRAND.

*Second*, Apple demands that Ericsson ██████████████████████████████████████

████████████████████████████████████████████████████████████████████████



*Third*, Apple ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ Apple is notoriously secretive about its product plans—for example, rumors abound that Apple will start offering cars[3] or virtual reality headsets[4]—putting Ericsson at a disadvantage. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### D.    Relief Requested

After closing its stores in this District, Apple took the unprecedented and surprising step of filing a breach of FRAND case in this District that was a mirror image of Ericsson's. Apple then pushed hard to position the FRAND cases as inevitably leading to a binding license between the parties. Apple even came to the Scheduling Conference and claimed in open court that it was

---

[3] [Apple Car | Release Dates, Features, Specs, Rumors (appleinsider.com)](#)
[4] [Apple VR | Headset, Gaming, Release (appleinsider.com)](#)

voluntarily agreeing to be bound and invited colloquy on this point. Yet only nine days later, Apple sent Ericsson a letter walking back its agreement to accept Ericsson's offer if it is confirmed as FRAND. Apple's strategy has become apparent. Apple wants to tell courts around the world that it is "bound" by this case in an attempt to avoid the consequences of its infringement and rejection of Ericsson's FRAND offer, but despite Apple's contrary representations, Apple appears unwilling to actually be "bound" to perform under Ericsson's offer if Ericsson's offer complies with FRAND—as will be determined by this case.

Ericsson thus requests that the Court order Apple to confirm that Apple is committed to be bound by the result of the FRAND adjudication on Ericsson's offer, that is, that Apple has committed to accept and perform under the terms of Ericsson's offer if it is found to be FRAND—subject to the Court's approval.

Dated: April 6, 2022

Theodore Stevenson, III (Lead Attorney)
Texas State Bar No. 19196650
ted.stevenson@alston.com
**ALSTON & BIRD**
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Telephone: (214) 922-3507
Facsimile: (214) 922-3899

Bryan Lutz (*pro hac vice*)
Georgia Bar No. 915395
bryan.lutz@alston.com
**ALSTON & BIRD**
1201 West Peachtree Street
Atlanta, GA  30309-3424
Telephone: 404-881-7000
Facsimile: 404-881-7777

Christine Woodin
Texas State Bar 24199951
cwoodin@hueston.com
**HUESTON HENNIGAN LLP**
523 West 6th St., Suite 400
Los Angeles, CA 90014
Telephone:(213) 788-4099
Facsimile: (888) 775-0898

Respectfully Submitted,

/s/ *Nicholas Mathews*
Nicholas Mathews
Texas State Bar No. 24085457
nmathews@McKoolSmith.com
Alexander Chern
Texas State Bar No. 24109718
achern@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Blake Bailey
Texas State Bar No. 24069329
bbailey@mckoolsmith.com
**MCKOOL SMITH, P.C.**
600 Travis Street, Suite 7000
Houston, TX 77002
Telephone: (713) 485-7300
Telecopier: (713) 485-7344

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Telecopier: (903) 923-9099

**ATTORNEYS FOR PLAINTIFFS
ERICSSON INC. AND
TELEFONAKTIEBOLAGET LM
ERICSSON**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been

served on all counsel of record via the Court's ECF system on April 6, 2022.

/s/ *Nicholas Mathews*
Nicholas Mathews

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Ericsson conferred with counsel for Apple regarding the

relief requested herein and that counsel for Apple indicated that Apple is opposed.

/s/ *Nicholas Mathews*
Nicholas Mathews