IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ERICSSON INC., AND TELEFONAKTIEBOLAGET LM ERICSSON, | § § § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION NO.  2:21-CV-00376-JRG |
| APPLE INC., | § § § | |
| *Defendant*. | § § | |

## ORDER

Before the Court is the Emergency Motion for Relief Against Ericsson's Attempt to Use

Secret, *Ex Parte* Actions in Bogota, Colombia to Subvert Proceedings in This Court (the "Motion")

filed by Defendant Apple Inc. ("Apple"). (Dkt. No. 116.) In the Motion, Apple moves this Court

for an Order directing Plaintiffs Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively,

"Ericsson") to "indemnify Apple from any fines, fees, penalties, and costs it incurs" as a result of

an injunction entered against Apple by a Colombian Court and further requests that this Court

expand the terms of the Protective Order (Dkt. No. 75) to "permit Apple to provide [certain

documents to] its Colombia counsel." (*Id*. at 4.) The Motion was filed on July 8, 2022 as an

emergency matter. The Court restructured its existing calendar and took other necessary steps on

July 12, 2022 to schedule and set a hearing on the Motion. (*See* Dkt. No. 120.) The Court held a

hearing on the Motion on July 21, 2022. (Dkt. No. 133.) Having considered the Motion, all relevant

briefing, and argument from the July 21, 2022 hearing, the Court finds that the Motion should be

**GRANTED-IN-PART** and **DENIED-IN-PART**.

## I.      Background

Apple contends that Ericsson has filed more than a dozen "secret, *ex parte* preliminary injunction requests" in various Colombian courts. (Dkt. No. 116 at 7.) According to Apple, it was only "through review of the public dockets" that it discovered that, "for most of the Colombia actions, the courts either denied Ericsson's request for injunctive relief or Ericsson withdrew the request once the proceeding was no longer *ex parte*." (*Id*.) Apple argues that in denying Ericsson's injunctive relief, one Colombian court "described Ericsson's conduct as 'coercion to negotiate more quickly.'" (*Id*.) (citations omitted).

However, on April 28, 2022, Court 43 of the Circuit of Bogota ("Court 43") preliminarily "admitted" an "official decree enjoining Apple Colombia from selling its phone products" in Colombia. (*Id*.)[1] Apple contends that before discovering the injunction on the public docket on April 29, 2022, it had "no access" to the contents of Ericsson's request. (*Id*.) On May 2, 2022, Apple Colombia filed a motion for reconsideration of the "admittance" of the injunction in Court 43, which was rejected on July 7, 2022 concurrently with the granting of Ericsson's injunction (the "Colombian Injunction"). (*Id*. at 7–8.) Ericsson posted the bond required by Colombian law on May 6, 2022. (*Id*. at 3.) Court 43 also "granted Ericsson an anti-anti-suit injunction directed at Apple Colombia S.A.S." (*Id*.)

According to Apple, the patent at issue in the Colombian case is "an alleged 5G standard-essential [Colombian] patent" that "will be part of this Court's December FRAND determination." (*Id*. at 1.) Apple thus contends that the "Colombian [I]njunction threatens this Court's ability to adjudicate this case, including the determination of binding FRAND terms for a

---

[1] The movant here is Apple, Inc. The only Apple-related entity before the Colombian court is Apple Colombia S.A.S. Apple Colombia S.A.S. is not a party to the instant case. References to Apple herein mean Apple, Inc. References to Apple Colombia herein mean Apple Colombia S.A.S.

cross-license, because it will provide Ericsson with coercive leverage to demand non-FRAND terms from Apple." (*Id*. at 4.)

Ericsson claims that Apple's "coercion" argument ignores the fact that Colombia is a very small market for Apple, accounting for less than one percent of Apple's worldwide sales. (Dkt. No. 125 at 10.) Ericsson further contends that the Apple's "overblown rhetoric" about the alleged "coercive leverage" stemming from the Colombian Injunction cannot "threaten to subvert th[is] Court's ability to adjudicate this case." (*Id*. at 12–13) (quotations omitted). Moreover, Ericsson notes that the instant case relates to contract claims between Ericsson and Apple, while the Colombian case relates to alleged infringement of a Colombian patent by Apple Colombia. Ericsson says that "the Colombian court has done nothing to prevent this Court from exercising its jurisdiction over *any* action." (*Id*. at 14) (emphasis in original).

Apple argues that, in order to prevent "immediate, irreparable injury" and to "protect the jurisdiction of this Court," the Court should order Ericsson to "indemnify Apple from any fines, fees, penalties, and costs it incurs as a result of the Colombian [I]njunction"[2] and "expand the terms of this Court's [P]rotective [O]rder to permit Apple to provide its Colombia counsel with copies of the Colombia filings Ericsson recently produced in this litigation together with the two Ericsson-Samsung licenses also produced." (Dkt. No. 116 at 4.) "To be clear, Apple's [M]otion does *not* seek an 'anti-injunction injunction' or any other relief against the Colombian court. Rather, Apple is asking this Court to order Ericsson to take financial responsibility for the consequences *here* of its action in *Colombia*—and hold Ericsson accountable *here* for its incessant attempts to subvert the Court's jurisdiction." (*Id*.) (emphasis in original).

---

[2] Ericsson contends that, "consistent with Colombian law, th[e] court required Ericsson to post a bond in connection with the injunction—a bond that already provides Apple [Colombia] with the only financial protection to which it is entitled." (Dkt. No. 125 at 13.)

Apple argues that such indemnification is warranted pursuant to this Court's decision in *Ericsson Inc. v. Samsung Elecs. Co., Ltd.* ("*Samsung*"). (Dkt. No. 116 at 78; *see also* 2021 WL 89980, at \*7 (E.D. Tex. Jan. 11, 2021) ("The issues present before this Court…should be resolved on the merits and not based on unfair economic leverage gained through litigious gamesmanship.").) In *Samsung*, the Court granted Ericsson's request to enjoin Samsung from enforcing a Chinese anti-suit injunction that would have prohibited Ericsson from pursuing claims on certain U.S. patents in the United States. (Dkt. No. 116 at 8.) In addition to the anti-suit injunction—relief which Apple explicitly does not seek in this case—the Court relatedly ordered Samsung to indemnify Ericsson for any penalties incurred as a result of the Chinese injunction. *Samsung*, 2021 WL 89980, at \*8. Ericsson disagrees with Apple's analogies to the *Samsung* case because it contends that Apple's Motion "asks this Court to step into the shoes of the Wuhan court and effectively prevent Ericsson from seeking relief for Apple's patent infringement anywhere in the world." (Dkt. No. 125 at 6.)

Ericsson also notes that "it is far from clear that Apple's motion should be accorded emergency treatment." (Dkt. No. 117 at 1.) Ericsson argues that Apple's Motion "repeats many of the same arguments that this Court has already rejected" as part of its Order Denying Ericsson's Motion to Confirm Apple's Agreement to be Bound. (Dkt. No. 125 at 1; *see also* Dkt. Nos. 64, 89.) Ericsson contends that, regardless of the pendency of the instant case seeking determination of a global FRAND rate, Apple is an "unlicensed infringer of Ericsson's patents that continues to reject Ericsson's standing license offers, subjecting itself to actions for infringement." (Dkt. No. 125 at 1.) Accordingly, Ericsson contends that it brought an action "against Apple's Colombian entity, in Colombia, concerning a validly issued Colombian patent." (*Id*.) Ericsson disputes

Apple's assertion that the Colombian action is "*ex parte*" or "secret," alleging that "Apple has been substantively engaged in the Colombian action since March 2, 2022." (*Id*.)

Ericsson argues that the premise behind Apple's Motion is that the "judgment in this case will create a binding license agreement between the parties," but notes that the language of this Court's Orders in this case have held "exactly the opposite." (*Id*. at 2.) Specifically, Ericsson contends that "Apple's continued oscillation between vehement resistance to performing under an adjudicated-FRAND offer and a diametrically opposed theory that the -376 action will lead to a binding resolution of the parties' dispute does not change this Court's clear holding: Apple does not have to accept Ericsson's current offer even if it is FRAND, but if Apple continues to sell phones infringing Ericsson's patents, it subjects itself to actions for infringement." (*Id*. at 5–6) (citations and quotations omitted).

To support its request for relief, Apple suggests that the *Unterweser* factors are "instructive," and performs an analysis of the same, while also admitting that the *Unterweser* factors "refer to the test adopted by the Fifth Circuit for evaluating when an injunction against the prosecution of a foreign lawsuit may be appropriate." (Dkt. No. 116 at 2, n.1, 8–15; *see also In re Unterweser Reederei, GmbH*, 428 F.2d 888, 890 (5th Cir. 1970)).) Pursuant to *Unterweser*, Apple argues that the Colombian Injunction is "vexatious" and "oppressive" and will result in "inequitable hardship" to Apple. (Dkt. No. 116 at 10–12.) Apple argues that the "Colombian [I]njunction would cause inequitable hardship for Apple because it would impede Apple's ability to get from this Court a determination of binding, global FRAND terms." (*Id*. at 11; *see also id*. ("The Colombian [I]njunction would also cause inequitable hardship to Apple in the Colombian courts because Ericsson pursued the injunction in secret, at Ericsson's request.").) Apple contends that it will "begin accruing lost revenue and/or penalties due to alleged infringement of a single

Ericsson declared 5G SEP in a country where no 5G networks are even in operation—without having had any meaningful right to dispute infringement, essentiality, or validity." (*Id*. at 12.)[3] Apple contends that requiring Ericsson to indemnify Apple for the Colombian Injunction would not "cause prejudice or offend other equitable considerations" because the parties have already agreed that "this Court is the appropriate forum to resolve the parties' licensing disputes" and because Apple "seeks only indemnification and not an injunction." (*Id*. at 13–14.) Apple also contends that the indemnification it seeks would not "deprive the foreign jurisdiction of any authority" because Ericsson "could still pursue its injunction" but would also "have to bear the economic consequences [of that decision] to Apple." (*Id*. at 15.)

Ericsson notes that the "*Unterweser* factors are inapplicable outside of the antisuit and anti-interference injunction context—a remedy that Apple's motion expressly disavows." (Dkt. No. 125 at 4.) Even applying the *Unterweser* factors, Ericsson contends that "[n]o policy of this forum is being frustrated by a Colombian court preventing Apple [Colombia] from continuing to infringe a validly issued Colombian patent in Colombia." (*Id*. at 9.)

## II.     Emergency Motion Practice

Rule CV-7 of the Local Rules for the Eastern District of Texas addresses emergency motions. The rule provides:

> Emergency motions are only those necessary to avoid imminent, irreparable harm such that a motion pursuant to LOCAL RULE CV-7(e) to shorten the period for a response is inadequate. Counsel filing an emergency motion should ensure that: (1) the caption of the motion begins with the word "emergency;" (2) the motion is electronically filed using the CM/ECF drop down menu option entitled "emergency;" (3) the motion clearly states the alleged imminent, irreparable harm and the circumstances making proceeding under LOCAL RULE CV-7(e)

---

[3] Apple contends that no 5G networks are operational in Colombia. (Dkt. No. 116 at 1.) Ericsson's Colombian counsel disputes this, arguing that "5G is operational in test beds in Colombia" and contends that the enjoined alleged infringement in Colombia "does not necessarily require an actual connection to a 5G network, only that the device infringe[s] the patented technology." (Dkt. No. 125-8, ¶ 21(a).)

inadequate; and (4) the chambers of the presiding judge is notified, either by telephone, e-mail, or fax, that an emergency motion has been filed.

Local Rule CV-7(l).

### III.   Analysis

The Court finds that Apple has failed to establish that the instant Motion is an "emergency motion." Apple did not comply with the Local Rules of this Court requiring that any "emergency" motion "clearly state[] the alleged imminent, irreparable harm and the circumstances making proceeding under LOCAL RULE CV-7(e) inadequate." Emergency motions are to be filed only in truly extenuating circumstances and should not be used as a means to secure an expedited briefing schedule and hearing before the Court. Indeed, Apple's argument in support of its requested relief is bereft of any showing of "imminent [and] irreparable harm" posed by the Colombian Injunction. This reality is only confirmed by Apple's conscious decision not to ask this Court for injunctive relief. A request for indemnification as to costs that are in the earliest of stages and far from being established is not a remedy consistent with an immediate and irreparable harm. Further, Apple fails to describe any nexus between the Colombian Injunction and the case before this Court. The Court agrees with Ericsson that Apple's analysis of the *Unterweser* factors is inappropriate in this case because Apple's Motion expressly disavows a request for injunctive relief. (*See, e.g.*, Dkt. No. 116 at 1, n.1; *see also* Dkt. No. 125 at 4.)[4] The Court finds that Apple's comparison of this case to the case before this Court in *Samsung* is similarly inapposite.[5]

---

[4] Apple admits the *Unterweser* factors are relevant in evaluating the propriety of an "injunction against the prosecution of a foreign lawsuit." (Dkt. No. 116 at 1.) As noted, Apple chose not to seek injunctive relief as to the action in Colombia.

[5] The Court's motive in *Samsung* was to prevent a Chinese court from injecting itself into a U.S. proceeding by enjoining what could and could not be filed in the United States. Here, Apple invites this Court to inject itself into an ongoing proceeding in Colombia. The Court declines Apple's invitation.

Despite being repeatedly questioned by this Court to describe what effect, if any, the Colombian Injunction has on the FRAND issues to be tried here, Apple's only response was that the Colombian Injunction provides Ericsson with "coercive leverage to demand non-FRAND terms from Apple." (Dkt. No. 116 at 4.) However, any purported "pressure" on Apple to negotiate with Ericsson regarding the parties' global licensing disputes exists between the parties and has no effect on this Court.

The Court has some sympathy for Apple's obvious frustration given that Ericsson has admittedly filed multiple suits in a variety of countries during the pendency of this case. While Ericsson may have hop-scotched all over the planet filing suits against Apple as a means to bring pressure to bear—or as Apple has termed it: for coercive effect—such actions, including the Colombian case embodied in the Motion, do not interfere with this Court's pending action or its efforts to bring the instant case to an early trial near the end of this calendar year. The Court does not indicate by this Order that it condones or approves, in any way, Ericsson's strategic efforts to pressure Apple into a negotiated global settlement. However, the Court simply does not find that Ericsson's actions pose an imminent risk of harm to this Court or its management of this case, nor do they post an imminent risk of harm to Apple as regards its ability to proceed with the instant case on the current trial schedule.

Negotiations between opposing parties while litigation between them is ongoing is common and often encouraged by some courts through mediation. In fact, this Court's Docket Control Order requires the parties to formally mediate their disputes no later than September prior to the current December trial date. That Apple might feel "pressured" to negotiate with Ericsson does not achieve the level of "imminent, irreparable harm" necessary to support the Motion or its

being brought as an emergency matter. Accordingly, Apple's request for indemnification is **DENIED**.

Apple also requests that the Court "expand the terms of this Court's [P]rotective [O]rder to permit Apple to provide its Colombia counsel with copies of the Colombia filings Ericsson recently produced in this litigation together with the two Ericsson-Samsung licenses also produced." (Dkt. No. 116 at 4.) At the July 21, 2022 hearing, the Court ordered Apple's counsel to file a Notice with the Court listing the documents it seeks to share with its Colombian counsel. Apple filed such Notice at Dkt. No. 136 (the "Notice"), which lists 76 documents. In the Notice, Apple represents that the listed documents are "documents that Ericsson has produced in this case from the Colombian cases, [that] the documents will only be shared with Colombian counsel for Apple in the involved matters, and [that] Colombian counsel agree to be bound by the Court's Protective Order." (Dkt. No. 136 at 1–2.) Apple requests that Colombian counsel be permitted to use the Colombian files in the Colombian cases. (*Id*. at 2.) Apple further represents that it withdraws its request to share license agreements with Colombian counsel. (*Id*.)

Having reviewed the Notice, the Court finds that Apple's request to provide the listed documents to its Colombian counsel should be **GRANTED**. Such documents shall be delivered by Apple to its Colombian counsel only upon condition that those receiving them are fully bound by, and subject to, the Protective Order entered in this case (Dkt. No. 75).

## IV.    Conclusion

For the reasons stated herein, the Court **DENIES** Apple's request for indemnification and **GRANTS** Apple's request that the Court permit Apple to provide its Colombia counsel with the documents identified in Apple's Notice. Additionally, the Court finds that Apple has misused and misapplied the rules for emergency motion practice in this Court. As noted above, the Court has

some level of sympathy for the frustration visited upon Apple by Ericsson's strategic conduct in other diverse forums, but such sympathy does not excuse a misuse of this Court's rules regarding emergency motion practice. Apple is placed on notice that further such conduct will warrant, and likely result in, sanctions against it.

      **So ORDERED and SIGNED this 28th day of July, 2022.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE